UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DENNIS PERDUE, #372392,

       Petitioner,

                              CASE NO. 2:08-CV-13575
v.                           HONORABLE PATRICK J. DUGGAN

NICK LUDWICK,

       Respondent.
_____/

**<u>OPINION AND ORDER DENYING THE PETITION FOR A WRIT OF HABEAS
CORPUS AND DENYING A CERTIFICATE OF APPEALABILITY AND LEAVE
TO PROCEED IN FORMA PAUPERIS ON APPEAL</u>**

At a session of said Court, held in the U.S.
District Courthouse, Eastern District
of Michigan on June 8, 2010.

PRESENT:   HONORABLE PATRICK J. DUGGAN
                  U.S. DISTRICT COURT JUDGE

**I.    Introduction**

Michigan prisoner Dennis Perdue ("Petitioner") has filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 asserting that he is being held in violation of his constitutional rights. Petitioner was convicted of assault with intent to commit murder, Mich. Comp. Laws Ann. § 750.83, assault with intent to commit great bodily harm, Mich. Comp. Laws Ann. § 750.84, felonious assault, Mich. Comp. Laws Ann. § 750.82, felon in possession of a firearm, Mich. Comp. Laws Ann. § 750.224f, and

1

possession of a firearm during the commission of felony, Mich. Comp. Laws Ann. § 750.227b, following a bench trial in the Wayne County Circuit Court in 2006. He was sentenced to 10 ½ to 16 years imprisonment on the assault with intent to murder conviction, a concurrent term of five to 10 years imprisonment on the assault with intent to commit great bodily harm conviction, a concurrent term of two to four years imprisonment on the felonious assault conviction, a concurrent term of two to five years imprisonment on the felon in possession conviction, and a consecutive term of two years imprisonment on the felony firearm conviction in 2007.

In his pleadings, Petitioner challenges the sufficiency of the evidence to support his convictions, claiming that he acted in self-defense. For the reasons stated herein, the Court denies the petition for a writ of habeas corpus. The Court also denies a certificate of appealability and denies leave to proceed *in forma pauperis* on appeal.

**II.    Facts and Procedural History**

Petitioner's convictions arise from a shooting which occurred in Detroit, Michigan, on June 19, 2005. The Court adopts the statement of facts set forth in Petitioner's brief on direct appeal to the state courts, insofar as the facts are consistent with the record, as the State has not disputed them. Those facts are as follows:

> The trial started with Victor Johnson testifying that he went with Calvin Burk and Burk's brother to Johnson's mother-in-law's house located on East Outer Drive in Detroit after being informed Defendant and his brother, Co-defendant Anthony Perdue, were threatening and harassing. Mr. Johnson stated that Defendant pulled out a gun and said he was going to kill everybody. He denied having a weapon on him and denied the persons he was with having weapons. He mentioned that Anthony Perdue

2

pulled out a handgun.  Mr. Johnson mentioned that Defendant tried to shoot, but the gun kept jamming.  He stated that he grabbed a pipe, but the Defendant's gun unjammed and he was shot in the finger.  Mr. Johnson said he started to run up the driveway and both Defendants were chasing after him and shooting at him.  He said he was shot twice in the stomach, once in the leg, and once in the back.  Mr. Johnson said [sic] ran to the backyard and Defendant tried shooting him but the gun jammed again.

On cross-examination, Mr. Johnson testified that when he arrived at his mother-in-law's house both Defendants were arguing with everyone there.  He mentioned that he did not know what the argument was about.  Mr. Johnson mentioned that it was a "strong possibility" that the Defendants were high or drunk.  He mentioned that as he was trying to hit Defendant with the pipe, he was shot in the finger.

Calvin Burk testified that he lives two blocks away from East Outer Drive.  He mentioned that Richard Johnson was at his house, and that Victor Johnson's wife and some of his family arrived.  Mr. Burk said that Victor Johnson wanted to go to a house on East Outer Drive and that he and his brother went with Johnson.  He mentioned that Defendants were walking up the street towards Mr. Johnson's mother-in-law's house.  Mr. Burk stated that Johnson questioned the Defendants about what was going on, and that Defendant ran up on Johnson with a gun and pulled the trigger, but he [sic] gun did not go off.  He mentioned that Defendant fired a shot that hit Burk in the chest.  Mr. Burk said that Johnson picked up a pipe.  He mentioned that he heard four to five gunshots.

On cross-examination, Mr. Burk testified that he was talking to Defendant as Defendant was trying to unjam his gun.  He mentioned that Mr. Johnson was running with a pipe in his hand at Defendant when Defendant fired the shot.  Mr. Burk said that after the gun went off Mr. Johnson dropped the pipe and ran.

Alethea Wells testified that she is a close friend of the family of Geraldine Daniels.  She said that she was aware of a dispute between Antjuan Daniels and Spanky on June 19, 2005.  Ms. Wells stated that she tried to talk to Spanky to calm down the situation, but that Defendants stopped over and began threatening.  She said that she called the police four times within a two hour period, but the police never came.  Ms. Wells said she went with Mr. Johnson's wife to get Mr. Johnson because Defendants were throwing things at the house and threatening.  She mentioned that she

3

saw Defendant pull out a gun and try to shoot it, but that the gun jammed. Ms. Wells said that Mr. Johnson ran to the backyard and came out with a pole and this is when bullets started flying. She mentioned that Victor got shot by Anthony Perdue. Ms. Wells said that once the shot was fired Mr. Johnson ran to the backyard and that Defendants followed him and were shooting. She mentioned she heard four or five shots.

On cross-examination, Ms. Wells testified that when Mr. Johnson got the pole he was within 15 feet of Defendants when shots were fired.

. . . .

Defendant testified, stating that when he arrived home from work on the day in question he saw Earnest Perryman (Spanky) in the house and Spanky was beaten up. After talking with Spanky, Defendant went with his mother down the street and spoke to one of the guy's mother who was involved in beating up Spanky. After their conversation, a car of guys pulled up (one being Calvin Burk and one being Victor Johnson). Defendant stated Mr. Johnson threatened he was going to kill Defendant. He said that Mr. Johnson told Defendant to stay there as Mr. Johnson ran into the backyard, but Defendant began walking away from the situation. Defendant said that Mr. Johnson came at him with a pole and hit Defendant with it, knocking Defendant to the ground. He said that Mr. Johnson came at him again, and Defendant started shooting in fear of his life as he thought Mr. Johnson was going to kill him. Defendant said he brought the gun with him after seeing how bad Spanky got hurt and wanted it for protection. He said he fired three or four shots to get Mr. Johnson off of him since Defendant was fearing for his life as he thought Mr. Johnson was going to kill him. Defendant stated that he did not deliberately fire the gun at Calvin Burk. He said that he fired the gun in self-defense.

On cross-examination, Defendant stated that he had no intention on using the gun and had it for protection. Defendant denied running after Johnson in the backyard.

(Pet'r's App. Br. at 3-7 (transcript citations omitted).)

At the close of trial, the trial court found Petitioner guilty of the charged assault and firearm offenses. The trial court subsequently sentenced him to the terms of

4

imprisonment as previously set forth.

Following his convictions and sentencing, Petitioner filed an appeal of right with the Michigan Court of Appeals raising the same insufficient evidence claim contained in the present petition. The Michigan Court of Appeals denied relief on his claim and affirmed his convictions. *People v. Perdue*, No. 275838, 2008 WL 723963 (Mich. Ct. App. March 18, 2008). Petitioner raised the same claim in an application for leave to appeal with the Michigan Supreme Court, which was denied. *People v. Perdue*, 481 Mich. 971, 750 N.W.2d 213 (2008).

Petitioner thereafter filed his federal habeas petition asserting that the prosecution presented insufficient evidence to support his assault convictions because he acted in self-defense. Respondent filed an answer to the petition contending that it should be denied for lack of merit.

## III. Analysis

### A. Standard of Review

Review of this case is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). Pursuant to the AEDPA, Petitioner is entitled to a writ of habeas corpus only if he can show that the state court's adjudication of his claims on the merits-

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination

of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). Simply stated, under § 2254(d), Petitioner must show that the state court's decision "was either contrary to, or an unreasonable application of, [the Supreme] Court's clearly established precedents, or was based upon an unreasonable determination of the facts." *Price v. Vincent*, 538 U.S. 634, 639, 123 S. Ct. 1848, 1852-53 (2003).

A state court's decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-13, 120 S. Ct. 1495, 1523 (2000). A state court's decision is an "unreasonable application of" clearly established federal law "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id*.

"[A] federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable." *Id*. at 409, 120 S. Ct. at 1521. "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id*. at 411, 120 S. Ct. at 1522. "Rather, it is the habeas applicant's burden to show that the state court applied [Supreme Court precedent] to the facts of his case in an objectively unreasonable manner." *Woodford v. Visciotti*, 537 U.S. 19, 25, 123 S. Ct. 357, 360

(2002).

## B. Insufficient Evidence Claim

Petitioner asserts that he is entitled to habeas relief because the prosecution presented insufficient evidence to support his assault convictions, claiming that he acted in self-defense. Respondent contends that this claim lacks merit.

"An habeas court reviews a claim that the evidence at trial was insufficient for a conviction by asking 'whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Scott v. Mitchell*, 209 F.3d 854, 885 (6th Cir. 2000) (citing *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979)). This "standard must be applied with explicit reference to the substantive elements of the criminal offense as defined by state law." *Jackson*, 443 U.S. at 324 n. 16, 99 S. Ct. at 2792 n. 16. When applying this standard, a habeas court "does not reweigh the evidence or redetermine the credibility of the witnesses." *Matthews v. Abramajtys*, 319 F.3d 780, 788-89 (6th Cir. 2003). "It is the province of the factfinder to weigh the probative value of the evidence and resolve any conflicts in testimony." *Id*. Therefore, "[t]he mere existence of sufficient evidence to convict . . . defeats a petitioner's claim." *Id*. (citations omitted).

Setting forth the elements of the assault offenses under Michigan law and applying the *Jackson* standard, the Michigan Court of Appeals concluded that the prosecution presented sufficient evidence to support Petitioner's assault convictions and to refute his

7

claim of self-defense. The court explained:

> Defendant argues there was insufficient evidence to support convictions for the assault offenses because defendant was acting in self-defense.
>
> This Court reviews challenges to the sufficiency of the evidence de novo. *People v. Osantowski*, 274 Mich.App. 593, 613-614, 736 N.W.2d 289 (2007). In reviewing the sufficiency of the evidence in a criminal case, this Court must review the evidence in the light most favorable to the prosecutor and determine whether a rational trier of fact could have found that the essential elements of the crime were proved beyond a reasonable doubt. *People v. Harmon*, 248 Mich.App. 522, 524, 640 N.W.2d 314 (2001).
>
> The elements of assault with intent to commit murder are an assault, with an actual intent to kill, which, if successful, would make the killing murder. MCL 750.83; *People v. Brown*, 267 Mich.App. 141, 147, 703 N.W.2d 230 (2005). The elements of assault with intent to do great bodily harm less than murder are an assault and the intent to do great bodily harm less than murder. MCL 750.84; *Brown, supra* at 147, 703 N.W.2d 230. The elements of felonious assault are an assault with a dangerous weapon with the intent to injure or place the victim in reasonable apprehension of an immediate battery. *People v. Avant*, 235 Mich.App 499, 505, 597 N.W.2d 864 (1999).
>
> In this case, there is sufficient evidence supporting defendant's convictions for all the assault charges. The record is clear that defendant pointed the gun at his first victim's head and pulled the trigger, and, but for the gun jamming, defendant would have killed this victim. After defendant cleared the jam, he shot this victim in the hand and abdomen. Defendant continued his assault by pursuing this victim into the backyard and shooting him in the back, finally ending the assault, when, standing over this victim, defendant ran out of bullets. Furthermore, the record is clear that defendant shot a second victim in the chest after clearing the weapon jam. These facts as presented at trial clearly provide sufficient [sic] to support defendant's convictions on the assault charges.
>
> Defendant next argues that he acted in self-defense because he honestly and reasonably believed he was in immediate danger because the first victim was armed with a pipe and threatened to kill defendant. Due to the fact that nothing in the record supports a theory that defendant acted in

self-defense, we reject this argument.

>In Michigan, self-defense is a lawful act if the defendant honestly and reasonably believes that his life is in imminent danger or that there is a threat of serious bodily harm. *People v. Kurr*, 253 Mich.App 317, 320-321, 654 N.W.2d 651 (2002). Self-defense is not available when a defendant is the aggressor unless he withdraws from any further encounter with the victim and communicates such withdrawal to the victim. *People v. Kemp*, 202 Mich.App 318, 323, 508 N.W.2d 184 (1993). Furthermore, a participant in voluntary mutual combat is required to take advantage of any reasonable and safe avenue of retreat before using deadly force against his adversary. *People v. Riddle*, 467 Mich. 116, 120, 649 N.W.2d 30 (2002).
>
>Here, defendant armed himself with a gun to investigate and address an assault upon his uncle. At a house on East Outer Drive, defendant began brandishing the gun the moment the victims arrived. The first victim retrieved the pipe for use against defendant only because defendant pointed his gun at this victim's head and attempted to shoot him. Furthermore, defendant could not honestly and reasonably believe his life was in imminent danger because his first victim, after being shot in the finger, began to run away. As the first victim was running, defendant shot him in the back. Thus, defendant was not acting in self-defense because defendant was the initial aggressor. Additionally, the evidence clearly indicates that defendant failed to communicate withdrawal, and failed to seek a reasonable and safe avenue of retreat.

*Perdue*, 2008 WL 723963 at *1-2.

The Michigan Court of Appeals' decision is neither contrary to *Jackson,* nor an unreasonable application of federal law or the facts. Given the testimony from victims Victor Johnson and Calvin Burk, as well as witness Althea Wells, the trial court, acting as the finder of fact, could reasonably conclude that Petitioner intended to commit the assaults, that he intentionally shot the victims, and that he did not act in self-defense. The testimony showed that Petitioner armed himself and confronted the victims about the prior assault of his family member. During the confrontation, he tried to shoot Victor

9

Johnson in the head, but his gun jammed. After Johnson grabbed a pipe, Petitioner shot him in the finger. Johnson dropped the pipe and ran. Petitioner and his brother chased Johnson and shot him in the stomach, leg, and back. Petitioner also shot Calvin Burk in the chest during the melee. Petitioner's self-defense claim is belied by the fact that he armed himself, instigated the confrontation, brandished his weapon, attempted to shoot Johnson in the head, shot Burk after clearing the gun jam, and then chased and fired multiple shots at Johnson, who had dropped the pipe and ran. A rational fact-finder could conclude from the evidence, taken in the light most favorable to the prosecution, that Petitioner committed the assaults with the requisite intent. A rational fact-finder could further conclude that Petitioner did not act in lawful self-defense because he was the initial aggressor and he failed to withdraw or retreat from the confrontation before using deadly force.[1]

Petitioner's insufficient evidence claim essentially challenges the trial court's credibility determinations and the inferences the court drew from the evidence presented at trial. It is well-settled, however, that "[a] federal habeas corpus court faced with a record of historical facts that supports conflicting inferences must presume-even if it does not affirmatively appear in the record-that the trier of fact resolved any such conflicts in

---

[1]Petitioner claims that two of the witnesses testified that he did not fire any shots until he was threatened with a pipe. (Pet'r's Habeas Br. at 3.) Defendant failed, however, to identify the witnesses or cite the relevant part of the record with such testimony. Regardless though, even if witnesses testified as Petitioner alleges, it would remain an issue for the fact finder to assess the credibility of the conflicting stories. As such, and as indicated above, there is sufficient testimony to convict Petitioner on all counts despite his claim.

favor of the prosecution, and must defer to that resolution." *Walker v. Engle*, 703 F.2d 959, 969-70 (6th Cir. 1983) (citing *Jackson*, 443 U.S. at 326, 99 S. Ct. at 2793). It is the job of the trier of fact, not a federal habeas court, to resolve evidentiary conflicts, and this Court must presume that the trier of fact resolved those conflicts in favor of the prosecution. *See Jackson*, 443 U.S. at 326, 99 S. Ct. at 2793. Given the evidence at trial, the Michigan Court of Appeals' decision was reasonable. Habeas relief is not warranted.

## IV. Conclusion

For the reasons stated, the Court concludes that Petitioner is not entitled to federal habeas relief on his insufficient evidence claim and the petition must be denied.

Before Petitioner may appeal the Court's decision, a certificate of appealability must issue. *See* 28 U.S.C. § 2253(c)(1)(A); Fed. R. App. P. 22(b)(1). A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). When a court rejects a habeas claim on the merits, the substantial showing threshold is met if the petitioner demonstrates that reasonable jurists would find the court's assessment of the claim debatable or wrong. *See Slack v. McDaniel*, 529 U.S. 473, 485, 120 S. Ct. 1595, 1604 (2000). "A petitioner satisfies this standard by demonstrating . . . that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327, 123 S. Ct. 1029, 1034 (2003). In applying this standard, a court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of the claim. *Id*. at 336-37.

Having considered the matter, the Court concludes that Petitioner has failed to make a substantial showing of the denial of a constitutional right as to his habeas claim. No certificate of appealability is warranted nor should Petitioner be granted leave to proceed *in forma pauperis* on appeal as any appeal would be frivolous and cannot be taken in good faith. *See* Fed. R. App. P. 24(a).

Accordingly,

**IT IS ORDERED** that the petition for a writ of habeas corpus is **DENIED** and **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER ORDERED** that a certificate of appealability is **DENIED** and that leave to proceed *in forma pauperis* on appeal is **DENIED**.

<u>s/PATRICK J. DUGGAN</u>
UNITED STATES DISTRICT JUDGE

Copies to:
Dennis Perdue, #372392
St. Louis Correctional Facility
8585 N. Croswell Road
St. Louis, Michigan 48880

Brian O. Neill, Asst. Attorney General